E-SERVED
03/22/04
07:59 PM ET
Baycol MDL 1431

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE: BAYCOL PRODUCTS LIABILITY LITIGATION | MDL No. 1431 (MJD) |
| This Document Relates To: | |
| Shaw v. Bayer Corporation, Case No. 02-CV-433 | |

**PLAINTIFF DOUGLAS SHAW'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND**

E-SERVED 03/22/04 07:59 PM ET Baycol MDL 1431

## I. INTRODUCTION

Plaintiff submits this reply memorandum in support of his motion to remand. As discussed below, Defendant Bayer fails to demonstrate that the Court has subject matter jurisdiction over this action. In particular, Bayer fails to explain how the claims stated in the Complaint for violation of Cal. Bus. & Prof. Code § 17200 et seq. and for unjust enrichment satisfy the amount in-controversy requirement for diversity jurisdiction. Instead, Bayer invents claims not alleged in the Complaint and tries to fit it within the rationale stated in Abrams, Pinkerman, and Artall. Bayer's arguments fail.

## II. ARGUMENT

### A. The Common Fund Exception to the Non-Aggregation Rule Does Not Apply

Bayer primarily opposes remand of this action on the ground that the Complaint alleges claims for medical monitoring and, therefore, the common fund exception to the non-aggregation rule applies. (See Bayer Opp., 4-5) Bayer is wrong.

The Complaint alleges two claims for relief under California law – one for violations of California's Business and Professions Code and one for unjust enrichment. (¶¶ 6, 10, 2-30)[1] The Complaint seeks relief for economic harm resulting from Defendant's allegedly wrongful business conduct and focuses on Defendant's "history of using false and misleading sales materials concerning Baycol" and Defendant's knowledge of its dangerous propensities which it "deliberately concealed and misrepresented to the consuming public." (¶¶ 14, 17) These acts and practices, according to the Complaint, "constitute unlawful, unfair and fraudulent business practices. . ." (¶ 24.) Based on these allegations, Plaintiff seeks economic relief in the form of "an order

[1] References to the operative complaint are denoted "¶ ___."

E-SERVED
03/22/04
07:59 PM ET
Baycol MDL 1431

compelling Defendants to disgorge their ill gotten gains, and awarding . . . full restitution of all money wrongfully acquired by Defendants by means of their unlawful business practices . . ." (¶ 25) Plaintiff's second claim, for unjust enrichment, is also predicated on economic harm: "Defendants have been unjustly enriched by the revenues they obtained from sales of Baycol to Plaintiff and the Class. Accordingly, a constructive trust should be imposed over the revenues of Defendants obtained Baycol sales. . ." (¶¶ 29-30) Thus, the only claims alleged in the Complaint are "separate and distinct" and may not be aggregated to obtain diversity jurisdiction. See Kanter v. Warner-Lambert Co., 265 F.3d 853, 859-860 (9th Cir. 2001); see also Boston Reed Co. v. Pitney Bowes, Inc., No. 02-01106 SC, 2002 WL 1379993, at *5 (N.D. Cal. June 20, 2002).

Bayer's reliance on this Court's order in Abrams and several related actions pending in this Court is misplaced.[2] In Abrams, the Complaint expressly pleaded a class claim for medical monitoring and prayed for, in part, "damages, costs and expenses, in connection with any medical testing, monitoring, diagnosis or treatment relating to the taking of Baycol." (See Abrams Complaint ¶¶ 30, 37, 38-47 and Prayer (c)) This Court denied Abrams' motion to remand, reasoning that Bayer submitted unrefuted evidence supporting its position in the form of a declaration from Dennis Connolly, (the managing director of Marsh USA, an insurance broker and provider of health and employment benefits administration). In that declaration, Connolly recited that he analyzed the Abrams complaint, determined that plaintiffs requested medical monitoring and placed no boundaries on the requested medical monitoring, and concluded that a medical

[2] See Abrams v. Bayer Corp., No. 02-0135; Benzuly v. Bayer Corp., No. 02 3580; Hurt v. Bayer Corp., No. 02-0165; Jensen v. Bayer Corp., No. 02-3581; Jones v. Bayer Corp., No. 02-0198; Knearem v. Bayer Corp., No. 02-0999; Lester v. Bayer Corp., No. 02-0156; Martinez v. Bayer Corp., No. 0877; and Rizzo v. Bayer Corp., No. 02-0150.

E-SERVED 03/22/04 07:59 PM ET Baycol MDL 1431

monitoring fund would exist for the common benefit of a group as a whole (not for any one individual participant). (See February 25, 2003 Order entered in Abrams v. Bayer Corp. et al., No. 02-0135. Here, Bayer has not submitted similar evidence in support of its position and thus there is nothing for Plaintiff to rebut.

Moreover, but the Court's reasoning in Abrams does not apply here. There is a crucial distinction between the complaints referenced in Abrams and the Complaint here: the Abrams-related complaints expressly assert claims for medical "monitoring" and "treatment." See February 25, 2003 Order.

In the Abrams action, due to the alleged "continuing danger" resulting from plaintiff's ingestion of Baycol, the complaint expressly set forth as one of the key issues "whether Plaintiff and members of the Class are entitled to costs and expenses in connection with any medical testing, monitoring, diagnosis or treatment related to any condition arising out of the purchase and consumption of Baycol." (Abrams Complaint ¶ 9). In addition, the Abrams complaint contained a separate claim requesting medical monitoring on the ground that it is "reasonably necessary." (Id. at ¶¶ 38-47). Furthermore, not only was medical monitoring expressly sought as a remedy in each of the four causes of action set forth, it was also specifically requested in the Prayer for Relief. (Id. at p.12, ¶ (c)).

Similarly, the complaint in the Benzuly action, No. 02-3580, expressly states the key issue as whether plaintiffs are entitled to medical monitoring. (See Benzuly Complaint ¶ 9(c)). Also, like the complaint in Abrams, the Benzuly Complaint alleged a separate cause of action for medical monitoring and expressly prayed for relief in the form of "medical testing, monitoring, diagnosis or treatment related to the taking of

E-SERVED 03/22/04 07:59 PM ET Baycol MDL 1431

Baycol." (Id. at p. 11, ¶ (c)). This is consistent with the allegation that "Benzuly . . . experienced adverse health effects and discomfort about her person" as a result of taking Baycol. (Id. at ¶ 17(a)).

In the Hurt action, No. 02-0165, the complaint alleges that plaintiff was injured as a result of taking Baycol. She was "diagnosed with rhabdomyolysis, hepatitis and proteinuria," and continues to experience adverse effects from ingesting the drug. (Id. at ¶ 18). Consequently, plaintiff is in "continuing danger making medical monitoring medically necessary and reasonable." (Id. at ¶ 20.)[3]

Unlike those complaints, the Complaint here does not allege personal injury resulting from ingestion of the drug, does not assert a claim for medical monitoring, and does not contain a prayer for relief in such form. It only notes in a passing reference in the typicality section that medical monitoring may be "appropriate."[4] (¶ 7) Here, unlike Abrams, Bayer submits no evidence (nor can it) in support of its position. For these reasons, Bayer fails to demonstrate that the exception to the rule prohibiting aggregation does not apply. Defendant failed to establish that the class members could be entitled to more than $75,000.

Bayer's reliance on Pinkerman and Artall is also misplaced. There, the Court denied motions to remand, noting that those plaintiffs expressly reserved the right to file individual claims for monetary damages in a separate suit and that the complaints otherwise sufficiently alleged personally injury claims. (See October 9, 2003 Order

---

[3] The complaints in Jensen, Jones, Knearem, Lester, Martinez, and Rizzo, each also include an express claim for relief in the form of medical monitoring.

[4] Indeed, after determining that California law does not permit class certification of medical monitoring claims, plaintiff here deleted from the draft complaint all claims for medical monitoring. Plaintiffs failure to remove the reference to medical monitoring in ¶ 7 does not create a basis for concluding that the Complaint seeks that relief.

E-SERVED 03/22/04 07:59 PM ET Baycol MDL 1431

entered in Pinkerman v. Bayer, No. 02-876, and Artall v. Bayer, No. 02-556 at 5) The complaints also sought every available remedy, "including compensatory and punitive damages, attorneys fees, costs of Baycol, incidental and consequential damages, pre- and post-judgment interest, [and] injunctive relief." (See id.) Those allegations are not present here.

Bayer's argument against remand on the ground that the Complaint leaves open the possibility that class members may file personal injury claims fails. Bayer concedes that "Plaintiff does not specifically allege that he or any of the putative class members seeks to recover for personal injuries relating to their consumption of Baycol . . .". Bayer Opp. at 7) Moreover, Bayer does not point to any allegations, other than to the Complaint's general references to the effects of Baycol that prompted required Bayer to stop marketing the drug, to support its argument that the possibility of future personal injury lawsuits supports diversity jurisdiciton.

Accordingly, Bayer's personal injury argument does not support diversity jurisdiction.

**B. This Court Has Already Ruled That Personal Injury Cases Are Not Amenable To Class Certification**

Defendant argues that although Plaintiff asserted only two equitable claims for relief, Plaintiff has not *expressly disclaimed* or excluded the *possibility* of asserting claims for personal injury, and therefore the Complaint may give rise to damages whose value could potentially exceed the jurisdictional minimum. (Bayer Opp. at 9-10)

Defendant's argument relies on the erroneous assumption that class actions for personal injury are appropriate for class certification. This Court and California courts have expressly rejected the viability of personal injury class actions. See In re Baycol

E-SERVED
03/22/04
07:59 PM ET
Baycol MDL 1431

Prod. Litig., 218 F.R.D. 197, 205 (D. Minn. 2003) (stating that "the underlying facts and circumstances of this case do not make the proposed personal injury class amenable to class certification."); see also Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1123 (1988) (stating that actions for personal injury are not appropriate for class action certification); Fuhrman v. California Satellite Sys., 179 Cal.App.3d 408, 424 (1986) (same), overruled on other grounds in Silberg v. Anderson, 50 Cal.3d 205, 266 (1990). Accordingly, there is no reasonable basis from which the Court could conclude that the class alleged here could possibly include personal injury claims.

Class actions for personal injury are not appropriate for class certification. See 28 U.S.C.A. Rule 23, Notes of Advisory Comm. on Rules, 1966 Amendment. The reason is that the major elements of personal injury claims—liability, causation, and damages—may vary widely from claim to claim, creating a wide disparity in claimants' damages and with respect to issues of proximate cause. Jolly, 44 Cal.3d at 1123 (citing D'Amico v. Sitmar Cruises, Inc., 109 Cal.App.3d 323 (1980); In re Northern Dist. of Cal., Dalkon Shield, etc., 693 F.2d 847 (9th Cir. 1982); In re Tetracycline Cases, 107 F.R.D. 719 (W.D. Mo. 1985); Mertens v. Abbott Labs, 99 F.R.D. 38 (D.N.H. 1983)). This is especially the case in medical products liability litigation because the factual and legal issues often differ dramatically from individual to individual with respect to cause of injuries. Dalkon Shield, 693 F.2d at 853.

Noting that differences among class members as to the issue of causation may force the named representative to make arguments at trial that may be adverse to another class member's claims, this Court denied class certification in the consolidated Baycol action, which included the present action: "This case involves a vast number of persons

E-SERVED 03/22/04 07:59 PM ET Baycol MDL 1431

who took *different dosages* of Baycol, at *different times*, and possibly took Baycol concomitantly *with other prescription drugs*." Baycol, 218 F.R.D. at 205-06 (emphasis added). Thus, the Court effectively barred Plaintiff from asserting a personal injury claim on behalf of the class.

Despite having successfully opposed class certification by advancing the argument that a personal injury class is inappropriate, Defendant now argues precisely the opposite position and insists that Plaintiff must not be allowed to avoid asserting a claim for personal injury. (See Bayer Opp. at 8) Leaving aside Defendant's self-contradictory argument, Defendant's contention is without support in the law.

**C. Defendant's Claim-Splitting Argument Does Support Subject Matter Jurisdiction**

Defendant argues that by not including claims for personal injury, Plaintiff is engaging in improper claim-splitting and as such must be harboring personal injury claims in the class definition. (See Bayer Opp. at 7-8.) Defendant is wrong. The import of "claim-splitting" preclusion is that any class member whose economic damages claims (as alleged in the Shaw complaint) are resolved in a binding class action, could not thereafter assert claims for personal injury actions. It will be an issue for the California Superior Court to define the class in such a way as to include persons who have only economic damages, and not personal injury.

The rule against claim splitting states that a single cause of action cannot be "split" into *successive* suits. The rule against splitting claims is in part a rule of abatement of actions and in part an application of the doctrine of *res judicata*. (4 Witkin, Cal. Proc. 4th (1997) Plead, § 35, p. 95.) Thus, if a plaintiff attempts to split claims, the defendant in the second suit may plead the pendency of the first, in abatement, or, if the first suit

E-SERVED
03/22/04
07:59 PM ET
Baycol MDL 1431

has already been concluded and a judgment rendered on the merits, the defendant in the second suit may invoke *res judicata*. Id. However, it does not follow from this rule, as Defendant contends, that Plaintiff is *required* to join all related claims in a single lawsuit. It is only that if Plaintiff attempts to file a separate claim on the same cause of action in a *later* suit, he risks being barred by the doctrine of *res judicata* or abatement of actions. (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2004) § 6:250 et seq.)

Defendant's reliance Wulfjen v. Dolton, 24 Cal.2d 891, 894 (1944), is unavailing. Wulfjen merely states the general rule that a party is barred from asserting in a *subsequent* action a claim that arose out of the same facts and circumstances that gave rise to the original action, and thus could have been alleged in the prior action. Id. at 894.

Bayer's reliance on Johnson v. American Airlines, Inc., is also inapposite. 157 Cal.App.3d 427 (1984) (absent settlement class member who failed to challenge approval of settlement by district court through direct appeal was barred from asserting same primary right in subsequent case filed in state court).

Neither Wulfjen nor Johnson held that the rule against claim splitting can be used to *require* a plaintiff to assert particular claims in his or her complaint. Rather, they simply apply the rule by barring a *subsequent* attempt to litigate a claim that could have been asserted in the earlier action. As such, "claim-splitting" preclusion has no relevant to determining the amount in controversy for the absent class members in this case.

E-SERVED 03/22/04 07:59 PM ET Baycol MDL 1431

### D. Defendant Mischaracterizes The Scope Of The Complaint And Fails To Meet Its Burden To Establish That Recovery Of Attorneys' Fees, Costs, And Interest Will Be Sufficient To Satisfy The Jurisdictional Minimum

Defendant argues that, even leaving aside the issue of medical monitoring, Plaintiff's request for equitable relief, attorneys' fees and costs, and pre- and post-judgment interest put each individual plaintiff's potential recovery above $75,000. (See Bayer Opp. at 6)

While attorneys' fees are properly included in the calculation of the amount in controversy, "the majority view is that attorneys' fees may not be aggregated to satisfy the jurisdictional minimum, but should be considered on a *pro rata* basis." Brisson v. Summit Tech., Inc., No. CIV.99-862, 1999 WL 766548, at *1 (D. Minn. Aug. 10, 1999); see also Kanter, 265 F.3d at 858 ("we hold here that any potential attorneys' fees award in this class action cannot be attributed solely to the named plaintiffs for purposes of amount in controversy"). Defendant conclusory argument provides no explanation for determining how much each class member's *pro rata* share of attorneys' fees will be, and thus no support for its contention that attorneys' fees and costs will put each class member's potential recovery above the jurisdictional minimum.

Despite insisting that the issue of aggregation of damages is "largely irrelevant" here, Defendant implicitly relies on aggregation in attempting to put Plaintiff's potential recovery above the jurisdictional minimum. (See Bayer Opp. at 6) For instance, Defendant asserts that "Plaintiff also seeks 'monetary damages, including but not limited to a full refund of the amounts expended for the purchase and/or use of Baycol.'" (Bayer Opp. at 2 (citing ¶ 10). However, Defendant provides no reasonable basis from which to conclude that potential recovery for *each* class member will exceed $75,000. Defendant

E-SERVED
03/22/04
07:59 PM ET
Baycol MDL 1431

## III. CONCLUSION

For the reasons stated above and in Plaintiff's opening brief, the Court should grant Plaintiff's motion to remand.

Dated: March 22, 2004

GREEN & JIGARJIAN LLP

By: ______________________
Robert A. Jigarjian

Robert S. Green
235 Pine Street, 15th Floor
San Francisco, CA 94104
Telephone: (415) 477-6700
Facsimile: (415) 477-6710

E-SERVED
03/22/04
07:59 PM ET
Baycol MDL 1431

# CERTIFICATE OF SERVICE

I, Lorelei C. Badar, hereby declare as follows:

I am employed by Green & Jigarjian, A Limited Liability Partnership, 235 Pine Street, 15th Floor, San Francisco, California 94104. I am over the age of eighteen years and am not a party to this action. On March 22, 2004, I served the within document(s):

**PLAINTIFF DOUGLAS SHAW'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND**

X by placing the document(s) listed above for collection and mailing following the firm's ordinary business practice in a sealed envelope with postage thereon fully prepaid for deposit in the United States mail at San Francisco, California addressed as set forth below.

Shirli Fabbri Weiss
**GRAY CARY WARE & FREIDENRICH**
4365 Executive Drive, Suite 1100
San Diego, CA 92121-2189

Diana Ng
**GRAY CARY WARE & FREIDENRICH**
1755 Embarcadero Road
Palo Alto, CA 94303-3340

Frederic S. Fox
Joel B. Strauss
**KAPLAN FOX & KILSHEIMER**
805 3rd Avenue, 22nd Floor
New York, NY 10022

John J. Beins
Seth D. Goldberg
**BEINS GOLDBERG & GLEIBERMAN**
5335 Wisconsin Avenue NW, Suite 910
Washington, DC 20015

Laurence D. King
**KAPLAN FOX & KILSHEIMER**
601 Montgomery Street, Suite 325
San Francisco, CA 94111

Patrick J. Stueve
**STUEVE HELDER & SIEGEL**
330 W. 47th Street, Suite 250
Kansas City, MO 64112

I declare under penalty of perjury under the laws of the State of California that the above is true and correct, executed March 22, 2004, at San Francisco, California.

Lorelei C. Badar