E-SERVED
05/25/04
06:42 PM ET
Baycol MDL 1431

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE: BAYCOL PRODUCTS LIABILITY LITIGATION | MDL No. 1431 (MJD) |
| This Document Relates To: Shaw v. Bayer Corporation, Case No. 02-CV-433 | **PLAINTIFF DOUGLAS SHAW'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RELIEF FROM PRETRIAL ORDER NO. 114 PARTS I(A) AND (B)** |

## I. INTRODUCTION

Plaintiff respectfully seeks an order from the Court granting relief from PTO No. 114 Parts I(A) and (B). Those Parts require that each plaintiff either "serve a Rule 26(a)(2) case-specific report from a medical expert attesting that Baycol caused the plaintiff to suffer injuries or damages," or "serve a letter and supporting documents subsequently followed by a case-specific expert report." Plaintiff should be relieved from those obligations because he alleges claims for economic, not physical, injuries. A medical expert's reports are unnecessary to proving Plaintiff's claims under Cal. Bus. & Prof. Code §17200 et seq. (the "UCL") and for unjust enrichment.[1]

[1] For the Court's convenience, Plaintiff's complaint is attached hereto as Ex. A. Plaintiff Shaw moved on February 13, 2004 to remand to state court for lack of subject matter jurisdiction, which motion is pending.

E-SERVED
05/25/04
06:42 PM ET
Baycol MDL 1431

## II. <u>DISCUSSION</u>

In California, "[i]f a witness is testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is . . . [r]elated to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact . . ." Cal. Ev. Code § 801.

In the context of Plaintiff's case, an expert <u>medical</u> report on damages and causation would not assist the trier of fact. The Complaint does not allege claims for physical injuries. Rather, the Complaint alleges claims having to do with Bayer's business practices and its unjust retention of benefits received as a result of those practices.

For example, the complaint alleges a claim under California's Business and Professions Code Section 17200 et seq. (the "UCL"). The UCL "embraces anything that can properly be called a business practice and that at the same time is forbidden by law." <u>Korea Supply Company v. Lockhead Martin Corporation</u>, 29 Cal. 4th 1134, 1143 (Cal. 2004) (internal quotations and citation omitted). "Unfair competition actions can be brought by a public prosecutor or 'by any person acting for the interests of itself, its members or the general public.'" <u>Id.</u> (quoting Cal. Bus. & Prof. Code § 17204).

Section 17200 of the UCL provides:

> As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with § 17500) of Part 3 of Division 7 of the Business and Professions Code.

An action brought under the UCL is equitable. Damages cannot be recovered. <u>Bank of the West v. Superior Court</u>, 2 Cal. 4th 1254, 1266 (1992). "Prevailing plaintiffs

E-SERVED 05/25/04 06:42 PM ET Baycol MDL 1431

are generally limited to injunctive relief and restitution." Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Company, 20 Cal. 4th 163, 179 (1999). Restitutionary disgorgement of profits is also an available remedy. Korea Supply, 29 Cal. 4th at 1152.

The type of "fraud" contemplated by Section 17200 bears little resemblance to common law fraud or deception. "In drafting the act, the [California] Legislature deliberately traded the attributes of tort law for speed and administrative simplicity. As a result, to state a claim under the act one need not plead and prove the elements of a tort." Bank of the West v. Superior Court, 2 Cal. 4th at 1267. A plaintiff can state a *prima facie* case under the UCL that a business practice is fraudulent without allegations of factual deception, reliance, and damage. Committee on Children's Television v. General Foods Corp., 35 Cal. 3d 197, 211 (1983). "The court . . . may order restitution without individualized proof of deception, reliance, and injury if it 'determines that such a remedy is necessary to prevent the use or employment of the unfair practice . . ." Id. All that is required is that "members of the public are likely to be deceived." Id.

The complaint also alleges a claim for unjust enrichment. A plaintiff asserting an unjust enrichment claim must plead and prove "that the acquisition of the property was wrongful and that keeping of the property by the defendant would constitute unjust enrichment." Calistoga Civic Club v. Calistoga, 143 Cal. App. 3d 111, 117 (Cal. App. 1983).

As with the UCL claim, Plaintiff respectfully submits that a medical expert's report would not assist the trier of fact in this case. Indeed, there have been cases involving alleged unjust enrichment holding that plaintiff's failure to submit an expert

E-SERVED 05/25/04 06:42 PM ET Baycol MDL 1431

report of any kind was not fatal to his case. See, e.g., Oyster Software, Inc. v. Forms Processing, Inc., No. C-00-0724 JCS, 2001 WL 1736382, *9 (N.D. Cal. Dec. 6, 2001) (rejecting defendants' argument that it was entitled to partial summary judgment because, in part, plaintiff did not present an expert report attesting that alleged wrongful conduct caused economic harm).

## III. CONCLUSION

For the reasons discussed above, the Court should order that Plaintiff be relieved from the obligations under PTO No. 114 Parts I(A) and I(B).

Dated: May 25, 2004

**GREEN & JIGARJIAN LLP**

By: [signature]
Robert A. Jigarjian

Robert S. Green
235 Pine Street, 15th Floor
San Francisco, CA 94104
Telephone: (415) 477-6700
Facsimile: (415) 477-6710

E-SERVED
05/25/04
06:42 PM ET
Baycol MDL 1431

# EXHIBIT A

E-SERVED 05/25/04 06:42 PM ET Baycol MDL 1431

ENDORSED FILED
San Francisco County Superior Court
SEP 0 5 2001
GORDON PARK-LI, Clerk
BY: Deputy Clerk

Robert S. Green (State Bar No. 136183)
Robert A. Jigarjian (State Bar No. 171107)
**GIRARD & GREEN, LLP**
160 Sansome Street, Suite 300
San Francisco, California 94104
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Laurence D. King (State Bar No. 206423)
**KAPLAN FOX & KILSHEIMER LLP**
100 Pine Street
San Francisco, CA 94111
Telephone: (415) 336-1238
Facsimile: (415) 677-1233

Frederic S. Fox
Joel B. Strauss
**KAPLAN FOX & KILSHEIMER LLP**
805 Third Avenue, 22nd Floor
New York, New York 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

Patrick J. Stueve
**STUEVE HELDER SIEGEL**
330 West 47th Street, Suite 250
Kansas City, MO 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101

John J. Beins
Seth D. Goldberg
**BEINS, GOLDBERG & GLEIBERMAN**
5335 Wisconsin Avenue, N.W., Suite 910
Washington, D.C. 20015
Telephone: (202) 686-1966
Facsimile: (202) 686-5517

Attorneys for Plaintiff

9:00 A.M.
FEB 0 8 2002
STATUS CONFERENCE

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

| | |
|---|---|
| DOUGLAS SHAW, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BAYER CORPORATION,<br><br>Defendant. | Civil Action No. 324304<br><br>**CLASS ACTION COMPLAINT FOR (1) VIOLATION OF THE CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200 ET SEQ. AND (2) UNJUST ENRICHMENT** |

E-SERVED 05/25/04 06:42 PM ET Baycol MDL 1431

Plaintiff, by his attorneys, brings this action on behalf of himself, and on behalf of a class of similarly situated California residents, and alleges as follows:

## PARTIES TO THE ACTION

1. Plaintiff Douglas Shaw is a resident of San Francisco County, California. Plaintiff first started using Zocor, a cholesterol-reducing drug, pursuant to a physician's prescription in August, 1999. During 2001, Plaintiff's insurer informed Plaintiff that it would provide coverage for use of Baycol, not Zocor. Plaintiff purchased and medicated with Baycol, beginning in April 2001, pursuant to his physician's prescription. Plaintiff stopped using Baycol in August 2001, after Plaintiff received a call from his supplier, informing Plaintiff that Baycol was no longer available and that Plaintiff should see his doctor immediately to change his prescription. Plaintiff's physician has since prescribed Pravachol.

2. Defendant Bayer Corporation, a corporation organized and existing under the laws of the State of Pennsylvania, is a wholly owned subsidiary of Bayer A.G., through which Bayer A.G. runs its United States operations. Bayer Corporation has offices and facilities throughout the United States with its headquarters located in Pittsburgh, Pennsylvania. Bayer Corporation also has facilities in Berkeley and Emeryville, California. Defendants Bayer A.G. and Bayer Corporation shall be collectively referred to herein as "Defendants" or "Bayer."

## CLASS ACTION ALLEGATIONS

3. Plaintiff brings this action on behalf of himself and on behalf of the Class consisting of all other California residents who purchased or ingested the drug Baycol.

4. This action has been brought and may be maintained as a class action under section 382 of the Code of Civil Procedure, section 1781 of the Civil Code, and Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure and case law thereunder, to which the California trial courts have been directed by the California Supreme Court to look for guidance.

5. Numerosity of the Class - Code Civ. Proc. § 382; Civ. Code § 1781(1); Fed. R. Civ. P. 23(a)(1). Members of the Class are so numerous that their individual joinder herein is impracticable. Plaintiff is informed and believes, and on that basis alleges, that several thousand Californians subscribed to and consumed Baycol.

E-SERVED 05/25/04 06:42 PM ET Baycol MDL 1431

6. Existence and Predominance of Common Questions of Fact and Law - Code Civ. Proc. § 382; Civ. Code § 1781(2); Fed. R. Civ. P. 23(a)(2), 23(b)(3). Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual Class members. These common legal and factual questions include:

(a) Whether Defendants engaged in unlawful, unfair, or fraudulent business practices;

(b) Whether Defendants were unjustly enriched by such conduct;

(c) Whether Defendants are liable to Plaintiff and the other Class members for damages or restitution because of their failure to provide adequate warnings concerning the risks of using Baycol.

7. Typicality - Code Civ. Proc. § 382; Civ. Code § 1781(3); Fed. R. Civ. P. 23(a)(3). The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff and the members of the Class used Baycol which was designed, manufactured, supplied, distributed, sold and/or placed in the stream of interstate commerce by Defendants, and as a result now suffer an increased risk of harm for which medical monitoring relief is appropriate.

8. Adequacy - Civ. Code § 1781(4); Fed. R. Civ. P. 23(a)(4). Plaintiff is an adequate representative of the Class because his interests do not conflict with those of its members, and he has retained counsel competent and experienced in complex class actions, including products liability litigation. Plaintiff and his counsel will fairly and adequately protect the interests of the Class.

9. Superiority - Code Civ. P. § 382; Fed. R. Civ. P. 23(b)(3). The class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the other members of the Class. It would be virtually impossible for the members of the Class to individually redress the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expenses to all parties, and to the court system, particularly in cases involving complex legal and factual issues such as this one. By contrast, the class action device presents far fewer management difficulties, and

E-SERVED 05/25/04 06:42 PM ET Baycol MDL 1431

provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## SUMMARY OF THE ACTION

10. An extraordinary incidence of serious adverse reactions, including death, have been associated with the use of Baycol. This action seeks equitable relief, on behalf of all Class members, to assure full and complete warnings concerning the use and effects from using Baycol, and monetary damages, including but not limited to, a full refund of all amounts expended for the purchase and/or use of Baycol. Plaintiff also seeks emergency notice to the Class so that Class members will be apprised of the potentially life-threatening reactions which have been associated with use of Baycol.

## FACTUAL BACKGROUND

11. Bayer began selling Baycol for use in the United States in 1997.

12. Baycol is a member of a class of cholesterol lowering drugs that are commonly referred to as "statins." Statins lower cholesterol levels by blocking a specific enzyme in the body that is involved in the synthesis of cholesterol. According to the FDA, all statins have been associated with rare reports of rhabdomyolysis.

13. During Bayer's fiscal 2000, sales of Baycol/Lipobay reached approximately $586 million.

14. Bayer has a history of using false and misleading sales materials concerning Baycol.

15. For example, in October 1999 the FDA informed Bayer that the FDA concluded that promotional material for Baycol was false, lacking in fair balance, or otherwise misleading, and that dissemination of the promotional material by Bayer Corporation (Bayer) and/or their agents, violated the Federal Food, Drug, and Cosmetic Act and its implementing regulations. The FDA requested Bayer to immediately cease using the offensive materials. In particular, the FDA informed Bayer that its promotional material was false or misleading in that it:

a. implied that Baycol enjoyed a clinical advantage over other statins, and the corresponding disclaimer did not adequately correct the misleading implication;

E-SERVED 05/25/04 06:42 PM ET Baycol MDL 1431

b. implied the clinical significance and the superiority of Baycol versus the other HMGs, and the corresponding disclaimer presented in smaller type did not adequately correct the misleading implication;

c. overstated the HDL-C efficacy of Baycol, and the corresponding disclaimer was insufficient to correct the misleading implication;

d. implied that Baycol is superior to Pravachol, and the corresponding disclaimer was insufficient to correct the misleading implication;

16. The FDA informed Bayer that its Baycol promotional material lacked fair balance, or was otherwise misleading, because it failed to present information relating to side effects and contraindications, with a prominence and readability reasonably comparable to the presentation of efficacy information.

17. Despite Defendants' knowledge of the dangerous propensities of Baycol, Defendants continuously and deliberately concealed from and misrepresented to the consuming public important facts concerning Baycol's safety and efficacy.

18. Rhabdomyolysis is a condition that results in muscle cell breakdown and release of the contents of muscle cells into the bloodstream. Symptoms of rhabdomyolysis may include muscle pain, weakness, tenderness, malaise, fever, dark urine, nausea and vomiting. The pain may involve specific groups of muscles or may be generalized throughout the body. Most frequently, the involved muscle groups are the calves and lower back. In rare cases, the muscle injury is so severe that patients develop renal failure and other organ failure, which can be fatal.

19. However, cases of fatal rhabdomyolysis in association with the use of Baycol have been reported significantly more frequently than has been the case with other statins. This is particularly so when Baycol is used at "higher doses," when used by elderly patients, and when used in combination with gemfibrozil (LOPID and generics) – another lipid-lowering drug. The FDA received reports of at least thirty-one deaths in the United States due to severe rhabdomyolysis associated with use of Baycol. Twelve of those deaths involved concomitant use of gemfribrozil. There are reports of many more deaths outside of the United States associated with Baycol use.

E-SERVED
05/25/04
06:42 PM ET
Baycol MDL 1431

20. On August 8, 2001, the Food and Drug Administration ("FDA") announced that Bayer was withdrawing Baycol from the United States market due to reports of sometimes fatal rhabdomyolysis.

21. Bayer's parent stated "Bayer has acted responsibly and in the interest of the patient's security and health at all times."

**FIRST CLAIM FOR RELIEF**
**(Unlawful, Unfair or Fraudulent Business Practices)**

22. Plaintiff repeats each and every allegation set forth above with the same force and effect as though fully set forth herein and further alleges as follows.

23. Plaintiff asserts this cause of action on behalf of himself, the Class, and the general public of California.

24. The acts and practices engaged in by Defendants and described herein constitute unlawful, unfair and fraudulent business practices under section 17200 et seq. of the Business and Professions Code.

25. Under sections 17200 and 17203 of the California Business and Professions Code, Plaintiff requests an order compelling Defendants to disgorge their ill gotten gains, and awarding Plaintiff and members of the Class full restitution of all money wrongfully acquired by Defendants by means of their unlawful business practices, plus interest and attorney's fees pursuant to, among other things, section 1021.5 of the Code of Civil Procedure.

**SECOND CLAIM FOR RELIEF**
**(Unjust Enrichment)**

26. Plaintiff repeats each and every allegation set forth above with the same force and effect as though fully set forth herein and further alleges as follows.

27. Since Baycol was first approved for sale in the U.S. in 1997, Defendants collected hundreds of millions of dollars from sales of Baycol. Millions of dollars that Defendants received from Baycol sales were attributable to sales to Plaintiff and the Class.

28. In exchange for Plaintiff's and the Class's payments for Baycol, Defendants sold Baycol to Plaintiff and the Class by means of false and misleading sales and marketing materials

E-SERVED 05/25/04 06:42 PM ET Baycol MDL 1431

that, among other things, did not adequately inform Plaintiff and the Class that Baycol was more prone to cause a severe adverse reaction than other alternative drugs.

29. Defendants have been unjustly enriched by the revenues they obtained from sales of Baycol to Plaintiff and the Class.

30. Accordingly, a constructive trust should be imposed over the revenues Defendants obtained from Baycol sales, for disgorgement and restitution to Plaintiff and the Class.

**WHEREFORE,** Plaintiff, on behalf of himself, the Class and the general public of California, prays for relief as follows:

A. For an order certifying the Class and appointing Plaintiff and his counsel to represent the Class;

B. For an order awarding Plaintiff and the members of the Class restitution and/or disgorgement and other equitable relief as the Court deems proper;

C. For an order enjoining Defendants:

i. Under Sections 17200 and 17203 of the Business and Professions Code, from continuing to engage in the business acts and practices that are unlawful, unfair, fraudulent, or deceptive as alleged herein; and

ii. Under Sections 17500 and 17525 of the Business and Professions Code, from continuing to disseminate the statements that are untrue or misleading as alleged herein.

D. For an order awarding Plaintiff and members of the Class pre-judgment and post-judgment interest, as well as their reasonable and attorneys' and expert witness fees and other costs; and

E. Such other and further relief as may be just and proper.

E-SERVED 05/25/04 06:42 PM ET Baycol MDL 1431

## JURY TRIAL DEMAND

Plaintiff demands trial by jury on all issues so triable.

Dated: September 5, 2001

Respectfully submitted,

**GIRARD & GREEN, LLP**

Robert S. Green
Robert A. Jigarjian
160 Sansome Street
Suite 300
San Francisco, CA 94104
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Laurence D. King
**KAPLAN FOX & KILSHEIMER LLP**
100 Pine Street
San Francisco, CA 94111
Telephone: (415) 336-1238
Facsimile: (415) 677-1233

Frederic S. Fox
Joel B. Strauss
**KAPLAN FOX & KILSHEIMER LLP**
805 Third Avenue
22nd Floor
New York, New York 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

John J. Beins
Seth D. Goldberg
**BEINS, GOLDBERG & GLEIBERMAN**
5335 Wisconsin Avenue, N.W.
Suite 910
Washington, D.C. 20015
Telephone: (202) 686-1966
Facsimile: (202) 686-5517

Patrick J. Stueve
**STUEVE HELDER SIEGEL**
330 West 47th Street, Suite 250
Kansas City, MO 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101

Attorneys for Plaintiff