E-SERVED
11/17/04
09:21 PM ET
Baycol MDL 1431

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE: BAYCOL PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>Shaw v. Bayer Corporation,<br>Case No. 02-CV-433 | MDL No. 1431 (MJD) |

**PLAINTIFF DOUGLAS SHAW'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO AMEND COMPLAINT**

## I. INTRODUCTION

Defendant disparages Plaintiff's motion to amend as little more than a "blatant attempt at forum shopping" aimed at "depriv[ing] defendants of a federal forum." Opposition Memorandum ("Opp.") at 1. The facts reveal quite the contrary, namely that Defendant has manipulated the process by litigating similar actions in state and federal court and invoking favorable rulings in one or the other, depending on which advances its interests.

Curiously, Defendant contends that Plaintiff lacks standing to pursue this action in this Court, even while it continues to insist that this action should not be remanded for lack of subject matter jurisdiction. These arguments are internally irreconcilable because

E-SERVED 11/17/04 09:21 PM ET Baycol MDL 1431

if Defendant is correct about standing, then this Court does not have subject matter jurisdiction and it must remand to the California Superior Court.

Defendant's baseless imputation of motive aside, Plaintiff seeks to amend his complaint for the following simple reason: after assessing the burdens of his claims against the potential outcome, he has determined that his unjust enrichment claim imposes a higher burden of proof as compared to his unfair competition law ("UCL") claim and thus will be more difficult to litigate successfully. Plaintiff's decision to forego an unjust enrichment claim is in no part based on and does not affect the amount in controversy relative to diversity jurisdiction.

Moreover, beyond the obvious merits of Plaintiff's motion to amend his complaint under the liberal standards of Rule 15, there are reasons why this Court should have serious reservations about its subject matter jurisdiction in this action. Because this issue has bearing on the propriety of both the motion to amend and compliance with PTO 114, it will be addressed in this memorandum.

## II. ARGUMENT

### A. Leave to Amend Should Be Granted

Under Federal Rules of Civil Procedure rule 15(a), "leave [to amend] shall be freely given when justice so requires." The United States Supreme Court has interpreted this to mean that unless there is a good reason for denial, "such as undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment," leave to amend should be granted. Thompson-El v. Jones, 876 F.2d 66, 67 (8th Cir. 1989) (citing Forman v. Davis, 371 U.S. 178, 182 (1982)). While there is no absolute right to amend, and

E-SERVED 11/17/04 09:21 PM ET Baycol MDL 1431

whether to grant a motion for leave to amend is in the court's discretion, a motion to amend should be denied "only if it asserts clearly frivolous claims or defenses." Becker v. Univ. of Nebraska at Omaha, 191 F.3d 904, 907-08 (8th Cir. 1999).

Courts generally grant motions to amend to elect different remedies. See Downing Properties Assoc. v. The Great Atlantic & Pacific Tea Co., Inc. 2001 WL 827576, *4 (E.D. Pa., July 23, 2001); see also 6 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION, 2d § 1474, p. 2 ("A Rule 15(a) amendment also is appropriate for … electing a different remedy that the one originally requested."). Courts also generally allow a plaintiff to withdraw claims where doing so would simplify and focus the issues presented to the court, id., § 1024; Paglin v. Saztec, Int'l, Inc., 834 F. Supp. 1184, 1187 (D. Mo. 1993), or clarify certain aspects of a plaintiff's claims. Price v. Int'l Union, 621 F. Supp. 1243, 1245 (D. Conn. 1985) (granting motion to amend to clarify claim even where doing so would interfere with briefing schedule on motion to dismiss).

Here, Plaintiff seeks leave to amend to modify the remedies he prays for. Such purpose is well recognized as a legitimate ground for seeking leave to amend. 6 WRIGHT & MILLER, § 1474. The amendment would not give rise to a new theory of recovery or require other changes to the allegations but would simply eliminate one type of relief currently sought.

Importantly, granting leave to amend here will not prejudice Defendant in any way. See Forman, 371 U.S. at 182 (stating that prejudice to non-movant must be shown); Bell v. Allstate Life Ins. Co., 160 F.3d 452, 454 (8th Cir. 1998) ("Any prejudice to nonmoving party must be weighed against the prejudice to the moving party by not allowing amendment."). Plaintiff's proposed amendment neither involves new theories of

E-SERVED 11/17/04 09:21 PM ET Baycol MDL 1431

recovery nor imposes additional discovery requirements and thus would not impose any additional burden on Defendant. Cf., Dover Elevator Co. v. Arkansas State Univ., 64 F.3d 442, 448 (8th Cir. 1995) (finding abuse of discretion where trial court granted leave to amend where trial was less than a month away and the discovery deadline was within a week of the motion); Vitale v. Aetna Cas. & Sur. Co., 814 F.2d 1242, 1252 (8th Cir. 1987) (finding abuse of discretion where trial court granted leave to amend less than two months before trial, no reason for delay was given, and additional discovery requirements would be imposed). Defendant has failed utterly to explain how it would be prejudiced by Plaintiff's amendment.

The cases on which Defendant relies are inapposite. Defendant cites Hensgens v. Deere & Co., 833 F.2d 1179, 1182 (5th Cir. 1987), for the proposition that a motion to amend is improper if it is a "naked attempt to . . . destroy the court's jurisdiction." Opp. at 4. In Hensgens, the question was whether the trial court correctly permitted the addition of a non-diverse party. After articulating the rule that the addition of a non-diverse party in an action removed to federal court on the basis of diversity jurisdiction defeats subject matter jurisdiction, the appeals court vacated the trial court's order permitting amendment and sent the case back for the trial court to "consider a number of factors to balance the defendant's interest in maintaining the federal forum with the competing interests of not having parallel lawsuits," including "the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether plaintiff has been dilatory in asking for amendment, whether plaintiff will be injured if amendment is not allowed, and any other factors bearing on the equities." Id. at 1182. The court, however, did not address the question of when an amendment is to be viewed as simply an attempt

E-SERVED 11/17/04 09:21 PM ET Baycol MDL 1431

to defeat federal jurisdiction, let alone suggest that the type of amendment Plaintiff seeks here falls into that category. Thus, Hensgens does not support Defendant's argument. As the following sections of this memorandum demonstrate, Defendant can point to no facts to support its contention that Plaintiff's motion to amend is merely a "naked attempt . . . to destroy jurisdiction." Moreover, the type of amendment Plaintiff seeks – electing a different remedy – is well recognized as having a legitimate purpose, specifically to clarify his claim and to simplify the issues presented.

Defendant cites Kennedy v. Josephthal & Co., Inc., 814 F.2d 798, 806 (1st Cir. 1987), Local 472 v. Georgia Power Co., 684 F.2d 721, 724-25 (11th Cir. 1982), and Cobb v. Sup. Judicial Ct. of Mass., 334 F. Supp. 2d 60, 61-62 (D. Mass. 2004), for the proposition that amendment should be denied if it is merely an attempt to avoid an adverse ruling. Opp. at 4. The circumstances in these cases are distinguishable from the present situation. In Kennedy, several factors weighed against granting leave to amend, including the fact that discovery would have to be *reopened*, plaintiff seeks to add *new allegations*, and the motion came *after* summary judgment was granted. Id., 814 F.2d at 806. In Local 472, the motion for leave to amend was filed "*after discovery was complete*, and *after* all defendants had filed motions for *summary judgment*," to which plaintiff had failed to respond. Id., 684 F.2d at 724 (emphasis added). In Cobb, the court denied motion for leave on the ground that the plaintiff's proposed amendment was *futile*. Id., 334 F. Supp. 2d at 62.

Plaintiff's proposed amendment will have virtually no negative impact on the discovery schedule, was not filed only after a negative ruling on a dispositive motion, will not require additional factual allegations, and thus will not affect Defendant's ability

E-SERVED 11/17/04 09:21 PM ET Baycol MDL 1431

to defend this action. Plaintiff's amendment seeks in good faith to modify only the relief sought in the complaint. Defendant has failed to establish that it will suffer prejudice if leave to amend is granted. Bell, 160 F.3d at 454.

For the foregoing reasons, this Court should grant Plaintiff's motion to amend his complaint.

**B. Lack of Standing Is a Jurisdictional Defect**

Defendant faces another problem: this Court's jurisdiction over this case is defective. Defendant falsely accuses Plaintiff of engaging in a "naked attempt to . . . destroy the Court's diversity jurisdiction." Opp. at 4. Remarkably, only a few pages later, it argues that Plaintiff fails to adequately allege injury and causation and thus lacks standing to prosecute this action in this Court. Opp. at 8. Defendant's position is internally inconsistent: it wants the Court to reject Plaintiff's motion to amend his complaint on the ground that such a move is merely an attempt to "defeat jurisdiction" of this Court, even as it argues that the Court should rule that Plaintiff has no standing, thus unwittingly acknowledging that this Court has no subject matter jurisdiction in the first place. This raises obvious problems for Defendant. If, as Defendant maintains, Plaintiff has no standing to seek relief in federal court, the Court's subject matter jurisdiction is defective and thus there is no basis for arguing that his motion to amend his complaint is a naked attempt to destroy jurisdiction; and a court that has no jurisdiction over his claim cannot require him to comply with a pre-trial order.

"Standing is an integral component of subject matter jurisdiction." Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986) ("[A]t an irreducible minimum, Article III requires the party who invokes the court's authority to show that he personally

E-SERVED 11/17/04 09:21 PM ET Baycol MDL 1431

has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant"). If a plaintiff lacks standing, a court has *no subject matter jurisdiction* and must remand the case to state court. See Lee v. American Nat'l Ins. Co., 260 F.3d 997, 1008 (9th Cir. 2001) (holding that defect in standing renders claim non-justiciable in federal court); Maine Ass'n of Interdependent Neighborhoods v. Comm'r, Maine Dept. of Human Servs., 876 F.2d 1051, 1054 (1st Cir. 1989) ("lack of standing is a jurisdictional defect which requires the federal court to remand"); People v. Beltz Travel Serv., Inc., 379 F. Supp. 948, 951 (N.D. Cal. 1974) (remanding to state court; holding that the court lacked jurisdiction in action that was improperly removed because plaintiff lacked standing in federal court).

Missing from Defendant's incoherent and self-contradictory analysis is an explanation of why a plaintiff that lacks standing – in a court that therefore lacks subject matter jurisdiction over his claim – must be required to "prove [his] injury and causation." Id. Employing tortured reasoning, Defendant insists that Plaintiff must comply with an order compelling him to "prove" that he has standing to sue in this court. However, a defendant "may not bootstrap [its] way into a federal court with a claim that the plaintiffs' standing would be an issue had the plaintiffs originally filed their lawsuits in a federal court." Republic of Venezuela v. Philip Morris, Inc., 287 F.3d 192, 199 fn.* (D.C. Cir. 2002). It is beyond explanation how a party can be required to comply with an order requiring proof of causation and injury where there exists a jurisdictional defect due to a lack of standing.[1]

---

[1] Defendant, in its earlier brief opposing Plaintiff's motion for relief from PTO 114, advanced this same position and asserted that "plaintiffs are required to establish an injury to pursue a Section 17200 claim in *federal court* because, without proof of injury,

E-SERVED 11/17/04 09:21 PM ET Baycol MDL 1431

Defendant's convoluted argument not only fails to demonstrate that Plaintiff must comply with PTO 114, but also undermines Defendant's hypocritical charge of forum shopping and reveals its own manipulation of the process by removing a case that was properly filed in state court.

### C. Notwithstanding the Consequences of Jurisdictional Defect, If the Court Grants Plaintiff's Motion to Amend, The Requirements of PTO 114 Will No Longer Apply to His Claim

Plaintiff's UCL claim is *not* predicated on personal injuries, but instead on the ground that Defendant's marketing of the efficacy and safety of Baycol was deceptive and that he paid money to purchase the drug. The UCL requires no more than this, as Plaintiff demonstrated in his motion for relief from PTO 114.[2]

To support its contention that an expert may be needed for a California UCL claim, Defendant falsely states: "The trial court responsible for the coordinated Baycol proceedings in California considered, and rejected, this *exact argument*." Id. (emphasis added).

---

they lack standing." Defendant's Memorandum in Opposition to Plaintiff's Motion for Relief from Parts I(A) and I(B) of PTO 114 ("Opp. PTO 114 Relief") at 2. Defendant properly cited in support of this proposition Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998 (9th Cir. 2004), which found that although the plaintiff would be permitted to pursue his UCL claim in California state court, he has no standing in federal court because he cannot demonstrate the requisite injury. Defendant now conveniently ignores the jurisdictional defect created by the lack of standing and seeks to improperly subject Plaintiff to a pre-trial order.

[2] Defendant's arguments about unjust enrichment are similarly incorrect. The primary case cited by Defendant, McBride v. Boughton, 2004 WL 2361825 (Cal.App. Oct. 21, 2004), actually dismissed the case for failure to state a claim for unjust enrichment. None of the cases cited by Defendant support a theory that Plaintiff must prove lack of benefit through an expert to recover under California's UCL.

E-SERVED
11/17/04
09:21 PM ET
Baycol MDL 1431

Defendant begins its attack with the erroneous assertion, "Plaintiff claims that his medical history and experience on Baycol are irrelevant to his [UCL] claim." Next, it cites to a California Superior Court ruling that requires plaintiffs to provide information in the form of a "Plaintiff's Fact Sheet." Opp. at 7. This is half-clever sophistry. First, the California trial court did not reject the "exact" contention Plaintiff made in his motion. An examination of the pleadings in that case, which Defendant chose not to include with its filing, shows that the plaintiffs were simply required to provide a statement of their medical history, not, as is required here under PTO 114, an expert report stating that the alleged injuries were caused by Baycol. Exh. A; Exh. B at 13-14. Defendant's arguments falsely portray the California court's rulings

Second, Plaintiff does not contend that his "medical history and experience" on Baycol are irrelevant. Instead, he contends that the case specific expert report requiring Plaintiff to submit a medical expert's statement to substantiate that his alleged injuries were *caused by* Baycol or that he received no benefit from Baycol is immaterial to his UCL claim because he needs only to establish that Defendant's business practice created the likelihood that consumers would be deceived.

**D. Defendant, Not Plaintiff, Has Engaged In Forum Shopping**

Although Defendant accuses Plaintiff of forum shopping, the facts strongly indicate that it is Defendant that has engaged in forum shopping. Even though this action was filed over three years ago, not once (except until Defendant filed its opposition to this motion) did Defendant disclose the existence of coordinated state Baycol actions brought pursuant to the UCL in California. It is unclear why Defendant chose to remove to this action to federal court, while simultaneously choosing not to remove the other

E-SERVED 11/17/04 09:21 PM ET Baycol MDL 1431

California UCL cases. Perhaps it was to obtain the benefit of possibly inconsistent rulings from separate courts, and then to try to enforce the rulings it liked best. The gaming tactic used by Defendant to subject Plaintiff to an improper forum, obstruct remand to state court, and subject him to an order requiring him to submit a case-specific medical expert report has resulted in nothing short of an enormous waste of the Court's and Plaintiff's time and resources.

In this action, references to the state proceedings first appear in Defendant's opposition to this motion, which includes two exhibits: a minute order and an order granting Defendant Bayer Corporation's motion to compel. Opp. at 2, 7. Those exhibits purport to demonstrate that the California trial court ruled in Defendant's favor on the same issue and thus support Defendant's contention that Plaintiff should not be allowed to avoid compliance with PTO 114 here. However, not only is it impossible to determine based on the documents Defendant submitted precisely what the California court ordered, but a closer look at the order and the documents Defendant chose not to submit – the "Plaintiff's Fact Sheet" and HIPAA authorization forms – shows that the court required only that the plaintiffs provide a statement of their medical history and sign HIPAA authorizations to release certain records to Defendant. See Exhs. A and B.

Thus, it is apparent that Defendant is manipulating the process by misstating the import and context of a ruling in the California court and providing the order to this Court without the benefit of any of the underlying pleadings that gave rise to the order. Here, Defendant removed Plaintiff's state court action on diversity jurisdiction grounds, next argues that Plaintiff lacks standing to litigate his claim in federal court, and now insists that Plaintiff must essentially prove that he has standing (proof of injury and causation, or

E-SERVED
11/17/04
09:21 PM ET
Baycol MDL 1431

absence of benefit) to proceed with his action. This is a transparent attempt to manipulate the process and to channel certain actions into federal court, while keeping another in state court.

## III. CONCLUSION

For the foregoing reasons, and because justice so requires, Plaintiff respectfully requests that the Court (1) grant Plaintiff leave to amend his Complaint or (2) remand this action to the California Superior Court.

Dated: November 17, 2004

**GREEN WELLING LLP**

By: Robert S. Green

Robert S. Green
Jenelle Welling
235 Pine Street, 15th Floor
San Francisco, CA 94104
Telephone: (415) 477-6700
Facsimile: (415) 477-6710

E-SERVED
11/17/04
09:21 PM ET
Baycol MDL 1431

**CERTIFICATE OF SERVICE**

I, Rose Warren, hereby declare as follows:

I am employed by Green Welling, A Limited Liability Partnership, 235 Pine Street, 15th Floor, San Francisco, California 94104. I am over the age of eighteen years and am not a party to this action. On November 17, 2004, the within document was electronically served to counsel of record via Verilaw:

**PLAINTIFF DOUGLAS SHAW'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE OF COURT TO AMEND COMPLAINT**

I declare under penalty of perjury under the laws of the State of California that the above is true and correct, executed November 17, 2004, at San Francisco, California.

Rose Warren